Miscellaneous Docket No. 25-_____

IN THE

# United States Court of Appeals
# For the Federal Circuit

**IN RE VIRTAMOVE CORP.,**

*Petitioner.*

On Petition for Writ of Mandamus from the United States
District Court for the Western District of Texas,
No. 7:24-cv-00033-DC-DTG, before the
Hon. Judge Counts and Magistrate Judge Gilliland

**VirtaMove Corp's Petition for Writ of Mandamus**

Qi (Peter) Tong
ptong@raklaw.com
RUSS AUGUST & KABAT
8080 N. Central Expressway, Suite 1503
Dallas, TX 75225
(310) 826-7474

Reza Mirzaie
rmirzaie@raklaw.com

Shani Williams
swilliams@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474

June 4, 2025

*Counsel for Petitioner,*
*VirtaMove Corp.*

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**   2025-

**Short Case Caption**   In re: VirtaMove Corp.

**Filing Party/Entity**   Petitioner, VirtaMove Corp.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/04/2025

Signature:   /s/ Qi (Peter) Tong

Name:   Qi (Peter) Tong

**FORM 9. Certificate of Interest**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| VirtaMove Corp. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☑    Additional pages attached

| | | |
|---|---|---|
| Kristopher Davis<br>Russ August & Kabat | Paul Kroeger<br>Russ August & Kabat | Jacob Buczko<br>Russ August & Kabat |
| Neil Rubin<br>Russ August & Kabat | Christian Conkle<br>Russ August & Kabat | Jefferson Cummings<br>Russ August & Kabat |
| Marc A. Fenster<br>Russ August & Kabat | Daniel B. Kolko<br>Russ August & Kabat | Jonathan Ma<br>Russ August & Kabat |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑    Yes (file separate notice; see below)    ☐    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Nos. 2025-

# United States Court of Appeals for the Federal Circuit

---

## IN RE VIRTAMOVE CORP.,

*Petitioner.*

---

On Petition for Writ of Mandamus from the United States District Court for the Western District of Texas, No. 7:24-cv-0033-DC-DTG, before the Hon. Judge Counts and Magistrate Judge Gilliand

---

## ADDITIONAL PAGE TO SECTIONS 4 AND 5

June 4, 2025

Qi (Peter) Tong
ptong@raklaw.com
RUSS AUGUST & KABAT
8080 N. Central Expressway, Suite 1503
Dallas, TX 75225
(310) 826-7474

Reza Mirzaie
rmirzaie@raklaw.com
Shani Williams
swilliams@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474

*Counsel for Petitioner, VirtaMove Corp.*

**Additional Legal Representatives (Section 4)**

James A. Milkey, Russ August & Kabat

Mackenzie Paladino, Russ August & Kabat

James S. Tsuei, Russ August & Kabat

Joshua Scheufler, Russ August & Kabat

**Related Cases (Section 5)**

VirtaMove Corp. expects to soon file a petition for writ of mandamus from the decision in *VirtaMove v. Amazon.com, Inc.*, No. 7:24-cv-00030-ADA-DTG (W.D. Tex.), and this upcoming *Amazon* petition will likely affect or be directly affected by this *Google* petition.

Additional parties in the *Amazon* case include Amazon.com, Inc.; Amazon.com Web Services LLC; and Amazon Web Services, Inc.

Additional counsel in the *Amazon* case includes the following attorneys of Knobbe, Martens, Olson & Bear LLP: Joseph R. Re, Jeremy A. Anapol, Colin B. Heideman, Christie R.W. Matthaei, and Logan P. Young.  Further of counsel is Harper Estes of Lynch Chappell & Alsup.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST .............................................................. i

TABLE OF AUTHORITIES ............................................................. viii

INTRODUCTION ........................................................................... 1

RELIEF SOUGHT .......................................................................... 3

ISSUES PRESENTED ..................................................................... 4

JURISDICTION ............................................................................. 4

LEGAL STANDARD: FIFTH CIRCUIT LAW CONTROLS ................................. 4

I.     The Fifth Circuit, Not the Federal Circuit, Controls Transfer Law ............... 4

II.    The Transfer Law Factors .............................................................. 5

III.   The Fifth Circuit and Federal Circuit Diverge on Transfer Law ................... 5

    A.    New burden of proof: clearly demonstrate who will "*actually materialize*" ......................................................................... 6

    B.    The Fifth Circuit's "Rigid" 100-Mile Rule Controls ........................... 8

    C.    Local Interest Is Neutral When Infringement Occurs Nationwide .... 10

    D.    Time-to-Trial Always Matters ............................................. 13

IV.    District Courts Issued Divided Decisions ........................................... 14

BACKGROUND ........................................................................... 15

V.     Case History ............................................................................ 15

VI.    Facts: Locations of Witnesses and Infringement ................................. 17

    A.    VirtaMove's 10 Present and Former Employees Closer to Texas ..... 17

    B.    Google's Witnesses 14 Closer to Texas ................................... 18

C.     Google's 13 Witnesses Closer to California ..................................... 18

D.     Third Party Witnesses ...................................................... 19

VII.   District Court Briefing................................................................. 19

A.     Undisputed: Fifth Circuit Law Controls ........................... 19

B.     Dispute On Burden of Proof and *Per Se Failure* ............... 19

C.     Willing Witnesses: Does the "Rigid" 100-Mile Rule Apply? ........... 20

D.     Third-Party Witnesses: Burden of Proof and 100-Mile Rule............. 21

E.     Local Interest: Nationwide Infringement ........................... 21

F.     Other Factors ................................................................ 21

VIII.   The WDTX Decisions ................................................................... 21

REASONS FOR GRANTING THE PETITION ..................................... 23

IX.   The District Court Erred by Failing to Decide the Correct Law ................. 24

X.    Google's Transfer Motion Fails Under the Correct Law ........................... 24

A.     Google Failed to Meet the Updated Burden of Proof ....................... 24

B.     Willing Witness Weigh Against Transfer (24 to 13) Using the Rigid 100-mile Rule ...................................................... 25

C.     Willing and Compulsory Witness Factors: No Proof of Who Will *Actually* Materialize .......................................... 27

D.     The Local Interest Factor should have been neutral ......................... 28

E.     Remaining Neutral Factors Unchallenged ......................... 29

F.     Google's Motion Should Have Been Denied.................................... 29

XI.   Formal Requirements for Writ ....................................................... 29

A.    First Requirement: VirtaMove Has No Other Relief ......................... 30

B.    Second Requirement Satisfied by Error of Law ................................ 30

C.    Third Requirement: Writ is Appropriate ............................................ 31

    1.    This Court Should Clarify the Law .......................................... 31

    2.    The Court Should Stop Transfer Abuse ................................... 32

    3.    Denying VirtaMove's Petition Will Cause Real Injustice ....... 33

CONCLUSION ...................................................................................................... 34

# TABLE OF AUTHORITIES

Cases

*Cerence Operating Co. v. Samsung Elecs. Co.*,
No. 2:23-CV-0482-JRG-RSP, 2025 WL 755219 (E.D. Tex. Mar. 10, 2025) ...... 8

*Datanet LLC v. Dropbox Inc.*,
No. 6:22-CV-01142-OLG-DTG, 2023 WL 7741313 (W.D. Tex. Nov. 14, 2023) ................................................................................................................ 32

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ................................................... 3, 6, 7, 12

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ...................................................... 9, 10

*In re Apple Inc.*,
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ............................ 8

*In re Chamber of Com. of United States of Am.*,
105 F.4th 297 (5th Cir. 2024) ............................................. 6, 7, 13, 31

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ......................... 2, 6, 7, 8, 11, 24, 25, 28, 29, 30, 31

*In re Cray Inc.*,
871 F.3d at 1358 ........................................................... 24, 29, 30

*In re EMC Corp.*,
677 F.3d 1351 (Fed. Cir. 2012) .................................................... 4

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ..................................................... 9

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023) .................................................... 13

*In re Hoffman-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009) ................................................ 10, 12

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018) ................................................... 30

*In re Juniper*,
14 F.4th 1313 (Fed. Cir. 2021) ................................................... 13

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) .................................................... 9

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ................................................ 6

*In re SAP America, Inc.*,
  133 F.4th 1370 (Fed. Cir. 2025) .............................. 2, 7, 25

*In re TikTok*,
  85 F.4th 352 (5th Cir. 2023) ...................... 2, 6, 9, 25, 26

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) ..................................... 6, 9

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ................................. 10, 12

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................. 5, 8, 13

*Microchip Tech. Inc. v. U.S. Philips Corp.*,
  367 F.3d 1350 (Fed. Cir. 2004) ......................................... 5

*Motion Offense, LLC v. Google LLC*,
  No. 6:21-CV-00514-ADA, 2022 WL 5027730(W.D. Tex. Oct. 4,
  2022) ............................................................ 1, 5, 8, 32

*Panduit Corp. v. All States Plastic Mfg. Co.*,
  744 F.2d 1564 (Fed. Cir. 1984) ......................................... 5

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964) ........................................................ 30

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ............................................................ 4

*SVV Tech. Innovations, Inc. v. Acer Inc.*,
  No. 6:22-CV-639-ADA, 2023 WL 2764765 (W.D. Tex. Apr. 3, 2023) ............. 9

*Westlake Corp. v. Chemcorp 1 LLC*,
  No. CV H-24-99, 2024 WL 3029019 (S.D. Tex. June 17, 2024) ...................... 12

*Winner Int'l Royalty Corp v. Wang*,
  202 F.3d 1340 (Fed. Cir. 2000) ......................................... 4

Statutes

28 U.S.C. § 1295 .............................................................. 4

28 U.S.C. § 1404 .......................................................... 4, 5

35 U.S.C. § 271 ................................................................................................ 11

## **INTRODUCTION**

The division between the Fifth Circuit and the Federal Circuit on transfer law has harmed VirtaMove Corp. ("VirtaMove"), a small company in east Canada whose patents have been infringed by the giants Google, Amazon, IBM, and HPE. VirtaMove respectfully asks the Federal Circuit to apply controlling Fifth Circuit transfer law—a dispositive dispute that the District Court ignored in error.  Unless the Federal Circuit intervenes, VirtaMove's case is likely to languish in the NDCA for 6–7 years without trial.  *See* Appx2103–21230 (exemplary NDCA docket). VirtaMove is clearly entitled to relief because Google made ***no argument*** that it met the Fifth Circuit's elevated burden of proof for transfer.

In recent years, transfer motions and mandamus petitions have flooded the courts, coinciding with the rise in popularity of the Western District of Texas as a venue for fast trials. Dkt. 96-3 at 2.  During this time, courts, law reviews, law firms, and even the anti-patentee entity RPX all noticed that the Federal Circuit's application of transfer law diverged from Fifth Circuit law.  *See, e.g., Motion Offense, LLC v. Google LLC*, No. 6:21-CV-00514-ADA, 2022 WL 5027730, at *4– 13 (W.D. Tex. Oct. 4, 2022) (explicitly providing different holdings under different recitations of transfer law); Appx2069–2072; Appx2080–2086; Appx2088–2093. This divergence manifests here in three ways.

First, the Federal Circuit and Fifth Circuit use different burdens of proof. In 2024, the Fifth Circuit raised the burden of proof: "a movant must show . . . its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will actually materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024). Meanwhile, the Federal Circuit and district courts continue to apply the historical standard, where "[r]equiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer is unnecessary." *In re SAP America, Inc.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025). The burden is dispositive: Google made no argument that Google met the Fifth Circuit's updated burden of proof, instead arguing that "[i]n no way did *Clarke* indicate it set a new 'standard' any different from what the Fifth Circuit, Federal Circuit, and courts . . . have applied for years." Appx1757.

Second, the Fifth Circuit and the Federal Circuit disagree about how rigidly to apply the 100-mile rule for witnesses. Under Fifth Circuit law, witnesses on the east coast find Texas more convenient based on distance traveled—and the inquiry ends there. *In re TikTok*, 85 F.4th 352, 361 (5th Cir. 2023) (finding error when a "conclusion ignores our 100-mile test"). Here, 24 willing witnesses are closer to Texas, compared to 13 in California, and they should have received full weight

2

against transfer under the rigid 100-mile rule, but the District Court erred in its transfer analysis by disregarding the convenience of these 24 witnesses.

Finally, the Fifth Circuit law regarding local interest differs from the Federal Circuit's latest approach. This factor should be neutral when infringement occurs nationwide.

This is a purely legal dispute that does not turn on any specific factual finding about the relevance of a few particular witnesses.  Had Judge Gilliland correctly applied Fifth Circuit transfer law, Google's transfer motion should have been denied—just like Judge Gilstrap denied IBM's and HPE's similar motions to transfer.  Appx1958–1978; Appx1981–2002.

## **RELIEF SOUGHT**

The Federal Circuit should direct the District Court for the Western District of Texas to: (1) reverse or vacate Gilliland's January 22, 2025 Order and Judge Counts's May 7, 2025 Order that grant Google's Motion to Transfer; and (2) request the Northern District of California return the transferred case back to the Western District of Texas, Midland-Odessa Division. *Def. Distributed v. Bruck*, 30 F.4th 414, 437 (5th Cir. 2022) (granting this relief for an already transferred case).

## ISSUES PRESENTED

This case presents a legal question: did the District Court err in failing to resolve and apply the correct recitation of transfer law when deciding Google's motion to transfer?

## JURISDICTION

The Federal Circuit has jurisdiction over appeals of a final decision from a district court relating to patents under 28 U.S.C. § 1295(a)(1).

Mandamus is the prescribed vehicle for reviewing rulings on transfer cases pursuant to 28 U.S.C. § 1404(a). *Def. Distributed*, 30 F.4th at 423. Mandamus is appropriate even when a case is already transferred outside of the Fifth Circuit and even when no appeal is perfected, as a remedy remains available. *Id.* at 423–25.

## LEGAL STANDARD: FIFTH CIRCUIT LAW CONTROLS

### I.    The Fifth Circuit, Not the Federal Circuit, Controls Transfer Law

Transfer law is a procedural matter, so Fifth Circuit law controls, and any conflicting interpretations by the Federal Circuit must yield to the Fifth Circuit. "[M]otions to transfer, as a procedural matter, [are] governed by the law of the regional circuit in which [the district court] sits." *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("transfer motions are governed by regional circuit law"). "Where the regional

4

circuit court has spoken on the subject, [the Federal Circuit] must apply the law as stated." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) ("We are obligated to follow regional circuit law. . . .").

## II.    The Transfer Law Factors

Under 28 U.S.C. § 1404, the Fifth Circuit evaluates a transfer motion using the public and private transfer factors.

> The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

## III.    The Fifth Circuit and Federal Circuit Diverge on Transfer Law

From 2021 through the present, the Federal Circuit issued an unprecedented quantity of mandamus decisions on transfer, frequently reversing the WDTX.  The frequency of reversal occurred, in part, because the Federal Circuit began applying its own transfer rules while the WDTX tried to follow Fifth Circuit law.  *See Motion Offense*, 2022 WL 5027730, at *4–13 (ruling that Fifth Circuit law controls, but then applying Federal Circuit law); Appx2070–2072 ("[b]y 2022, the discrepancies

between the Fifth Circuit and Federal Circuit had become obvious."); Appx2092–2093 ("The Federal Circuit Fails to Consistently Apply Regional Circuit Law"); Appx2080–2086 ("Federal Circuit Sidesteps Fifth Circuit Ruling on Convenience Transfers" and "the Fifth Circuit took positions on other factors that appeared to be less in line with current Federal Circuit thinking.")

In 2022–2024, the Fifth Circuit issued five opinions that clarified or updated transfer law, resulting in a divide with the Federal Circuit: *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625 (5th Cir. 2022); *Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022); *In re TikTok, Inc.*, 85 F.4th 352 (5th Cir. 2023); *In re Clarke*, 94 F.4th 502 (5th Cir. 2024); and *In re Chamber of Com. of United States of Am.*, 105 F.4th 297 (5th Cir. 2024).

## A. New burden of proof: clearly demonstrate who will "*actually materialize*"

The Fifth Circuit raised the burden of proof, but the Federal Circuit has yet to adopt this.

Historically, Federal Circuit law merely required movants to show that witnesses and evidence supporting transfer were *merely relevant*. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) (witnesses who "have knowledge potentially relevant to infringement and validity issues, even if it is not possible at present to specify further just how material their testimony might be to the yet-underdeveloped issues in this case" favored transfer). Last April, the Federal Circuit

6

reiterated the low standard of mere relevance. *In re SAP Am., Inc.*, 133 F.4th 1370, 1375 (Fed. Cir. 2025) ("Requiring a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.")

But the Fifth Circuit raised the burden of proof in 2024. Transfer is appropriate *only if* the moving party "clearly establishes good cause":

> to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*In re Clarke*, 94 F.4th at 508 (emphasis original).

In other words, a movant can no longer merely show that identified witnesses and evidence are merely relevant; the movant must now clearly demonstrate that a *significant* gain in convenience (of a witness or evidence) will *actually* materialize (by being presented in a closer court). "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments.'" *Id*. at 508. The Fifth Circuit reiterated that the movant's burden to adduce evidence that clearly demonstrates that *significant* convenience gains will "*actually* materialize" is not just a preponderance. *Id*. at 508 n.3 (citing *Def. Distributed*, 30 F.4th at 433). Now, "[t]he bar is much higher." *Chamber of Com.*, 105 F.4th at 304.

Prior Federal Circuit opinions decided under the mere "relevance" standard have now lost any precedential value. *Cerence Operating Co. v. Samsung Elecs. Co.*,

No. 2:23-CV-0482-JRG-RSP, 2025 WL 755219, at *4 n.3 (E.D. Tex. Mar. 10, 2025)

(noting that movant's caselaw "all predate *In re Clarke* and [movant] never

addresses the issue of evidence actually materializing").

### B. The Fifth Circuit's "Rigid" 100-Mile Rule Controls

The law is split: the Federal Circuit has repeatedly rejected a "rigid"

application of the Fifth Circuit's 100-mile rule for evaluating the travel convenience

of willing witnesses. Multiple sources documented this split of law. *E.g., Motion*

*Offense*, 2022 WL 5027730 at *8–9 (finding different outcomes under Fifth Circuit

and Federal Circuit formulations of the rule); Appx2048; Appx2092.

Under Fifth Circuit law, the entire formulation of the 100-mile rule is:

> When the distance between an existing venue for trial of a matter and a
> proposed venue under § 1404(a) is more than 100 miles, the factor of
> inconvenience to witnesses increases in direct relationship to the
> additional distance to be traveled.

*In re Volkswagen*, 545 F.3d at 317 (citing Fifth Circuit authority and providing the

underlying reasoning). The rule does not further inquire into airports, transportation

method, flight times, flight connections, or the like (although some opinions discuss

these as supporting dicta).

The Federal Circuit has repeatedly ruled that the Fifth Circuit's 100-mile rule

should not be "rigidly" applied, resulting in distant witnesses far from both venues

being given neutral weight. *E.g., In re Apple Inc.*, No. 2022-128, 2022 WL 1196768,

at *3 (Fed. Cir. Apr. 22, 2022) ("we have repeatedly rejected the view" of the Fifth

Circuit); *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) ("this court—applying Fifth Circuit law—held that the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify" (cleaned up)); *In re Toyota*, 747 F.3d at 1340 ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums."); *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (giving European witnesses no weight); *SVV Tech. Innovations, Inc. v. Acer Inc.*, No. 6:22-CV-639-ADA, 2023 WL 2764765, at *4–5 (W.D. Tex. Apr. 3, 2023) ("According to the Federal Circuit, time is a more important metric than distance.")

Recently, the Fifth Circuit explicitly found error when a court "ignores our 100-mile test." *TikTok*, 85 F.4th at 361 (holding distant witnesses in China favored transfer, and otherwise is error).  The Fifth Circuit approvingly cited the Federal Circuit case *In re Nintendo* as an example of how to correctly apply the 100-mile rule.  *TikTok*, 85 F.4th at 361 n.8 (citing *In re Nintendo Co.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009), which rigidly applied the 100-mile rule to hold that Japanese witnesses find Texas more inconvenient than Washington, not that they would find both distant forms equally inconvenient).

Under the correct formulation of Fifth Circuit law, the inconvenience to witnesses must be analyzed using the "rigid" 100-mile rule, and witnesses

9

everywhere matter. The Fifth Circuit's 100-mile rule does not permit a court to discount or neutralize a witness far from both forums based on time or connecting flights, as this would defeat the very purpose of the 100-mile rule, which directly increases the inconvenience of distant witnesses beyond 100 miles proportional to every additional mile. The 100-mile rule does not stop applying once witnesses are sufficiently far from both venues; it is not the "between-100-and-300-mile" rule. The distance of *every* witness to both venues must be calculated and compared under the rigid rule, without discounting or neutralizing them.

### C. Local Interest Is Neutral When Infringement Occurs Nationwide

Historically, the Federal Circuit has held this factor to be neutral when infringement occurs nationwide. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) ("infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue").

But recently, the Federal Circuit changed its analysis to look at where accused products were "designed, developed, and tested." *E.g., In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020). This unfairly double-counted the engineering locations of a defendant under both the willing witness and local interest factors.

10

However, recent Fifth Circuit cases require returning to the rule that infringement nationwide results in local interest being neutral for three reasons.

First, *Clarke* ruled that this factor must "focus on the *events*—not the *parties*," and the local-interest inquiry is concerned with the interest of *non-party citizens* in adjudicating the case." 94 F.4th at 511. Thus, the defendant party's *own, private* design, development, and testing cannot affect this *public* transfer factor, which is limited to the interest of a *non-party*.

Second, *Clarke* reinforced the *TikTok* rule that to "identify localized interests properly, we look not to the parties' significant connections to each forum but rather the significant connections between a particular venue and ***the events that gave rise to a suit***." *Clarke*, 94 F.4th at 502 (cleaned up, emphasis added). Patent infringement only arises under 35 U.S.C. § 271 by making, using, or selling an invention. The design, development and testing by an accused party in the case does not "give rise" to infringement Section 271, so these activities do qualify as a public local interest under Fifth Circuit law. Such proxies must "never subsume the ultimate inquiry" of where the suit arose (here, where infringement occurs). *Clarke*, 94 F.4th at 511.

Finally, the analogous cases require finding that infringement is "completely diffuse" when infringement occurs nationwide. *Id.* at 510. A completely diffuse interest is one that "could apply to virtually any judicial district or division in the United States" and cannot affect the local-interest determination because "the

11

interest is the same in both the transferor and transferee venue." *Id.* In *Clarke*, both Texas and the District of Columbia had traders and marketplace service providers who would have been affected by the Court's rulings, so the local interest was "completely diffuse." *Id.* at 512.  In *Def. Distributed*, the Fifth Circuit ruled that the controversy over a New Jersey statute was not localized to New Jersey because the outcome would "bar *Defense Distributed* from publishing its materials anywhere" and reducing Texans' access. 30 F.4th at 435; *see also Westlake Corp. v. Chemcorp 1 LLC*, No. CV H-24-99, 2024 WL 3029019, at *4 (S.D. Tex. June 17, 2024) (holding under *Clarke* that arguments about accused products being "conceived, designed, and developed" in Florida is "unavailing. Texas's interest in adjudicating a trademark infringement case . . . is more significant than the Florida interest"). So, when patent infringement occurs nationwide, the citizens of Texas are affected just as much as the citizens of all other states, and the interest is "completely diffuse."

The rule from *Hoffman* and *TS Tech* should return: infringement nationwide does not create a local interest, regardless of where design and development occurred.

### D. Time-to-Trial Always Matters[1]

Historically, the "court congestion" *Volkswagen* factor has never excluded any class of plaintiff under Fifth Circuit law. *See In re Volkswagen*, 545 F.3d at 315. But in 2023, the Federal Circuit issued a precedential decision which ruled:

> in this case it was a clear abuse of discretion to accord this factor any weight, *see Juniper*, 14 F.4th at 1322 (discounting time-to-trial difference because there was no "need of a quick resolution" where patentee lacked "position in the market ... being threatened").

*In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). *In re Google* should be corrected because 1) the case that it relies on (*In re Juniper*, 14 F.4th 1313, 1322 (Fed. Cir. 2021)) merely supports *discounting* this factor (not disregarding this factor entirely); and 2) the Fifth Circuit case *Chamber of Commerce* controls. 105 F.4th 297 at 309–10.

In *Chamber of Commerce*, the Fifth Circuit explicitly dealt with a fact pattern before and after "that rationale for speed is no longer present" and no injunctive relief was no longer available. *Id.* at 310. The Fifth Circuit reweighed the time to trial factor in favor of transfer (down from "heavily" in favor of transfer) when "[t]here is no special circumstance present here that would make a five-to-six-week difference weigh 'more heavily' in favor of transfer." *Chamber of Com.*, 105 F.4th at 310. Thus, the rule from *In re Google*, that this factor cannot be accorded any

---

[1] This exemplifies another divergence, but it has no impact here because VirtaMove is a real business with a real product, not a patent assertion entity.

weight when there is no need of a quick resolution (under the absence of a special circumstance), is no longer good law. 58 F.4th at 1383.

## IV.    District Courts Issued Divided Decisions

In the Eastern District of Texas, Judge Gilstrap denied IBM's and HPE's motions to transfer. Appx1958–1978; Appx1981–2002. IBM and HPE made substantially similar arguments to what Amazon and Google did in the WDTX by arguing that IBM/HPE had engineers and evidence near the NDCA, and that third party prior artists and witnesses from Docker and Kubernetes could only be compelled in the NDCA. Appx1958–1978; Appx1981–2002.

Judge Gilstrap rigidly applied the 100-mile rule and gave full weight to the witnesses that VirtaMove identified as being in the eastern United States and eastern Canada. Appx1967–1972; Appx1991–1995.  HPE and IBM asked "…this Court to disregard the inconvenience to these witnesses because they 'will have to travel a significant distance to either venue.' . . . The Court disagrees that such significant discounting is warranted. If the case remains in this District, many witnesses only 'would have to travel approximately half the distance to attend trial.'" Appx1971; Appx1994.  Thus, Judge Gillstrap weighed the willing witness factor solidly against transfer. Appx1971–1972; Appx1994–1995.

On the compulsory process factor, Judge Gilstrap used the correct burden of proof.  For example, regarding Docker, Kubernetes, and prior art witnesses, Judge

Gilstrap held that "the Court is not convinced . . . that all of these witnesses have relevant, non-redundant testimony that will actually materialize at trial." Appx1962–1966; Appx1987–1990. Judge Gilstrap further discounted the third-party prior art witnesses because they were statistically unlikely to be selected at trial, so HPE/IBM "has not met its burden of showing that these prior art inventors are, in fact, likely to testify." Appx1964–Appx1966; Appx1989–Appx1990.[2]

Judge Gilstrap showed how, when the correct transfer law is applied to substantially similar arguments and facts, the result is denial of transfer. Appx1958–1978; Appx1981–2002. At minimum, Judge Gillistrap's opinion and Judge Gilliland's opinion reveal a split in the application of transfer law.

## BACKGROUND

## V.    Case History

VirtaMove's groundbreaking patents relate to a specific type of secure application containerization technology. Independent analyst Gartner put the technology of AppZero (VirtaMove's predecessor)[3] in a class of its own:

---

[2] Judge Gilstrap harmlessly erred in favor of the movant by giving the movant's witnesses "appropriately lessened" weight. Appx1966.  Under Clarke's "*actually* materialize" standard, unlikely witnesses *do not* provide good cause *at all*.

[3] Herein, "VirtaMove" collectively refers to VirtaMove Corp. and its predecessors AppZero and Trigence.



Appx1006–1007.  VirtaMove filed cases against Google, Amazon, IBM, and HPE in the eastern and western districts of Texas because VirtaMove and its expected witnesses are closer to Texas than California and because the Texas courts are known for reliably reaching trial in about two years. Appx1796–1797. Thus, Google, Amazon, IBM, and HPE all filed motions to transfer to the notoriously slower NDCA. Appx1121–1346.

In the *Google* case, Judge Gilliland granted Google's motion to transfer but stayed the case to give VirtaMove time to appeal. Appx4. VirtaMove filed objections and supplemental notices of authority, which Judge Counts overruled. Appx1941–2160.

The *Amazon* case ran alongside the *Google* case in the Western District of Texas. Judge Gilliland granted Amazon's motion to transfer and stayed the case to

allow VirtaMove time to appeal. VirtaMove intends to file a similar mandamus petition in the *Amazon* case.

The *HPE* and *IBM* cases were filed in the Eastern District of Texas. Judge Gilstrap denied HPE's and IBM's motions to transfer. Appx1958–1978; Appx1981–2002.

In each of the cases, Google, Amazon, HPE, and IBM made substantially similar arguments: that some of their witnesses are in or closer to the NDCA, and many third-parties (including Docker, Kubernetes, and prior art witnesses) can be subpoenaed there. Appx1137–1142; Appx1962–1972; Appx1987–1995.

## VI. Facts: Locations of Witnesses and Infringement

During briefing, VirtaMove and Google identified the following witnesses.

### A. VirtaMove's 10 Present and Former Employees Closer to Texas

VirtaMove is based in Ontario, Canada, on the east coast, which is 753 miles closer to Texas than to the NDCA. Appx1675; Appx1677. All five of VirtaMove's employees (Stokes, Burgins, Sousa, Cameron, Antonie) work there. Appx1791. All three inventors (Rochette, O'Leary, and Huffman) are closer to Texas than to California, but Rochette is not a willing witness and thus not weighed. Appx1792. O'Leary and Huffman are willing witnesses in Ontario, Canada. Appx1550–1557; Appx1558–1565. Former VirtaMove employees Woodward, O'Connor, and

Colford[4] are willing witnesses[5] from Ontario, Canada or Massachusetts, which are closer to Texas. Appx1566–1573; Appx1574–1580; Appx1448–1455; Appx1792.

### B. Google's Witnesses 14 Closer to Texas

Google identified engineers Vasetsky and Yaron in Israel, which is closer to Texas. Appx1132; Appx1139. They work on the accused product Migrate to Containers. Google also identified relevant engineers of accused products in Atlanta (1), New York (2), India (1), and Ohio (1). Appx1130.

Discovery revealed that Google has 7 other relevant witnesses closer to Texas, including Allen, Tsvetanov, Akella, Rajaram, Villalba, Rubbo, and Burhan in North Carolina, New Jersey/New York, Atlanta, Pennsylvania, Austin, Sao Paolo, and Georgia, respectively. Appx1357–1358; Appx1671; Appx1673. They are engineers on various accused products. Appx1357–1358.

### C. Google's 13 Witnesses Closer to California

"Google identified 12 engineers" in California or Washington as willing witnesses. Appx1137–1138; Appx1756.

---

[4] Post-complaint developments would make Colford unavailable.
[5] VirtaMove alternatively argued Huffman, O'Leary, Colford, Woodward, and O'Connor as third-party witnesses. Appx1361 n.6. For this appeal, it does not matter how they are categorized.

For this appeal, VirtaMove does not dispute that Google articulated potential relevance of these 13 employees, but Google did even not try to prove which of these 13 witnesses will *actually* materialize.  *See* Section VIII(B), *infra*.

### D. Third Party Witnesses

For third-party witnesses, VirtaMove identified Roth and Benedito, former VirtaMove employees, who reside in Texas. Appx1793; Appx1361–1362.

Google identified two categories of third-party witnesses in California: 1) Docker/Kubernetes witnesses, including Hykes and Founadi; and 2) prior art witnesses, including Beck, Price, Cheriton, Schmidt, Hanko, Sapuntzakis, Lam, and Rosenblum.  Appx1132–1134.

## VII.  District Court Briefing

During briefing, VirtaMove and Google made the following arguments.

### A. Undisputed: Fifth Circuit Law Controls

VirtaMove argued that Fifth Circuit law controlled on issues of procedure, including transfer law.  Appx1352.  Google did not dispute this. Appx1751–65.

### B. Dispute On Burden of Proof and *Per Se Failure*

VirtaMove argued that the Fifth Circuit raised the burden of proof to require that Google provide evidence that clearly demonstrates that a significant gain in convenience will *actually* materialize.  Appx1351–1354.  VirtaMove argued that

Google failed to even argue that it met this standard at all, so Google failed to meet the burden of proof *per se*. *Id.* at Appx1351–1353.

Google never argued that it met the burden of proof to identify willing and third-party witnesses who will *actually* materialize. Rather, Google argued that it did not need "to identify with ***certainty*** the witnesses it will call," and "[i]n no way did *Clarke* indicate it set a new 'standard' any different from what . . . courts . . . have applied for years." Appx1757.

### C. Willing Witnesses: Does the "Rigid" 100-Mile Rule Apply?

VirtaMove argued that under the "rigid" 100-mile rule, more willing witnesses found Texas more convenient, including 10 present and former VirtaMove witnesses and 14 Google witnesses. *See* § VII(A), (C), *supra*. These 24 willing witnesses in the eastern United States and eastern Canada would outweigh the convenience of Google's 13 willing witnesses in California.

Google argued for transfer based on 13 willing witnesses in California and Washington. *See* Section VII(C), *supra*; Appx1137–1140. Google also (persuasively) argued that the other 24 witnesses in the eastern United States and eastern Canada would find Texas equally inconvenient due to connecting flights, travel times, and the need to be away from home regardless of which venue they picked. Appx1139 (arguing these witnesses "will be inconvenienced by extensive travel regardless of the forum"); Appx1756–1757.

20

### D. Third-Party Witnesses: Burden of Proof and 100-Mile Rule

For willing witnesses, the parties again argued whether Google met the burden of proving that the third-party witnesses will *actually* materialize. Appx1361–1364; Appx1756–1757, Appx1761–1762; Appx1856–1858.

### E. Local Interest: Nationwide Infringement

It is undisputed that the allegedly infringing Google products are sold nationwide. Appx1367 (citing Appx1383 for Google's "field sales teams across all of North America"). Docker and Kubernetes in California designed and developed a subset of open-source code modules used in the accused Google products. There are no allegations that individual Docker's or Kubernetes's modules independently infringe any asserted patent; only Google's fully assembled products are alleged to infringe. Appx1003–1103.

### F. Other Factors

Judge Gilliland found that the other transfer factors were neutral, except that he did not explicitly rule on the practical problems factor. Appx3–4. To simplify the appeal, VirtaMove does not dispute the neutral/unruled findings.

## VIII. The WDTX Decisions

Judge Gilliland granted Google's Transfer Motion. Appx3–4. Section II of Judge Gilliland's Order sets forth the legal standard he applied, but it says nothing about the burden of proof, rigid 100-mile rule, or how to analyze the local interest.

*Id.* at Appx2. Judge Gilliland made no explicit ruling on the dispositive legal arguments raised by VirtaMove. Appx2–4. Judge Gilliland did not cite *Clarke* regarding the burden of proof, nor did Judge Gilliland cite *TikTok* in his analysis of the 100-mile rule. *Id.* He did not even acknowledge the dispute of controlling law. *Id.*

Judge Gilliland *must have* implicitly used the pre-*Clarke* standard of mere relevance for witnesses identified by Google. Otherwise, the transfer motion would have been denied for a *per se* failure to meet the burden of proof, as Google did not even argue that it clearly demonstrated that any of the witnesses who allegedly favor transfer will actually materialize.

Consistent with the facts, Judge Gilliand found that VirtaMove identified 4 Canadian witnesses, one Massachusetts witness, two Dallas-based witnesses, and "several Google employees who reside outside the NDCA." Appx3. On Google's side, Judge Gilliland found that "Defendant has clearly demonstrated that its employees are concentrated in NDCA and Seattle, with most working in or near San Francisco." *Id.* Judge Gilliland then ruled that, "[w]hile it may be true that Plaintiff's identified witnesses are geographically closer to WDTX than NDCA, Plaintiffs identified witnesses will have to travel well over 100 miles to either district." *Id.* The only purpose of sentence this was to categorically discount or neutralize the convenience of 24 witnesses identified by VirtaMove. Thus, ***none of***

22

***VirtaMove's and Google's witnesses in the eastern United States and eastern Canada*** (except perhaps Roth and Benedito) ***were given proper consideration under the rigid 100-mile rule***.

VirtaMove filed timely objections and subsequent briefing, to which Google responded.  Appx1941–2164.

Judge Counts found no error with Judge Gilliland's order because "this Court must review what is on the page. If Judge Gilliland applied Federal Circuit transfer venue considerations to the disputed order, he did so without any signs whatsoever in his work product." Appx7–8.  Otherwise, Judge Counts did not address VirtaMove's objection that the Judge Gilliland could not have made his ruling when using the correct, Fifth Circuit version of transfer law. *Id.*; Appx1941–1949.

Judge Counts recognized that VirtaMove "seeks clarification between Federal and Fifth Circuit transfer venue jurisprudence." Appx7. But rather than deem it error that Judge Gilliland did not rule on the dispositive questions of law, Judge Counts found no error and ordered transfer. Appx7–8.

## REASONS FOR GRANTING THE PETITION

The Federal Circuit should grant the petition for two reasons.  First, the District Court committed legal error by failing to rule on dispositive questions of law and/or by applying the wrong law.  Second, under the correct law, Google's transfer

motion should have been denied on the merits because significantly more witnesses will find trial in Texas more convenient (24 to 13).

## IX.    The District Court Erred by Failing to Decide the Correct Law

Judge Gilliland erred by failing to acknowledge the updated burden of proof required and the rigid 100-mile rule by required by the Fifth Circuit; these questions were front, center, and dispositive. Appx2–5; Appx1352–1364; Appx1856–1858. Judge Counts erred by not reversing or vacating Judge Gilliland's decision, despite noting that there is a disputed issue of law. Appx7.

The District Court's silence regarding the correct burden of proof and application of the rigid 100-mile rule (or the implicit use of divergent Federal Circuit law) warrants reversal. *In re Cray Inc.*, 871 F.3d 1355, 1358 (Fed. Cir. 2017) ("[a] trial court abuse[s] its discretion by applying incorrect law"); *Clarke*, 94 F.4d at 508–16 (finding reversable errors in misapplication of law).

## X.    Google's Transfer Motion Fails Under the Correct Law

### A. Google Failed to Meet the Updated Burden of Proof

The District Court should have denied Google's Motion to Transfer because Google failed to clearly demonstrate that the convenience of its identified witnesses will *actually* materialize, as required by *Clarke*. *See* § III(A), *supra*. Google simply failed to meet the correct legal standard and instead argued that the bar was not changed at all, arguing "[i]n no way did *Clarke* indicate it set a new 'standard' any

24

different from what [courts] have applied for years." Appx1757.  Nothing in the record "clearly demonstrates" which of Google's witnesses will *actually* materialize. Instead, Google effectively conceded that it could not identify with certainty which witnesses it will call at a trial nearly two years away. *Id*.  None of the willing witnesses or third-party witnesses identified by Google provide constitute good cause for transfer, and Google could not have won either of these factors as a matter of law. *See* § III(A), *supra*.

Because Fifth Circuit law controls (*see* Section I, *supra*) and because *Clarke* raised the burden of proof (*see* Section III(A), *supra*), the mere relevance standard from *SAP* should be overruled. 133 F.4th at 1375.  VirtaMove was entitled to a *per se* denial of the transfer motion under the correct law.

## B. Willing Witness Weigh Against Transfer (24 to 13) Using the Rigid 100-mile Rule

VirtaMove identified 24 willing witnesses closer to Texas.  *See* Section VII(A)–(B), *supra*.  Google named 13 closer to California.  *See* Section VII(B), *supra*.

When the rigid 100-mile rule is not ignored, as *TikTok* instructs, the willing witnesses count is 24 closer to Texas against 13 witnesses closer to California, and all 24 of VirtaMove's identified witnesses are farther from California and would find the NDCA less convenient than the WDTX.  Google argued that under the Federal

Circuit's non-rigid 100-mile rule, all 24 of VirtaMove's witnesses may be deemed neutral because they "will be inconvenienced by extensive travel regardless of the forum."    Appx1139; Appx1756–1757. Google's argument persuaded Judge Gilliland to rule that "Plaintiff's identified witnesses will have to travel well over 100 miles to either district," resulting in 0 witnesses favoring WDTX to 13 witnesses favoring NDCA. Appx1003.  Thus, the legal question is dispositive.

Judge Gilliland and the Federal Circuit are supposed to follow the rigid 100-mile rule as instructed by the Fifth Circuit. *TikTok*, 85 F.4th at 361 (it is error to "ignore[] our 100-mile test"); *see* Sections I, III(B), *supra*. Each of the 24 witnesses identified by VirtaMove must travel farther to California than to Texas and would thus find Texas more convenient. *See* Section VI(A), *supra*.  Judge Gilliland erred by misapplying the 100-mile rule by discounting or neutralizing their relevance: "While it may be true that Plaintiff's identified witnesses are geographically closer to WDTX than NDCA, Plaintiff's identified witnesses will have to travel well over 100 miles to either district."  Appx1003.  This factor should have weighed heavily against transfer—like how Judge Gilstrap ruled when faced with similar arguments. Appx1971 (correctly applying 100-mile rule and rejecting argument that "they will have to travel a significant distance to either venue"); Appx1994 (same).

### C. Willing and Compulsory Witness Factors: No Proof of Who Will *Actually* Materialize

Because Google did not meet *Clarke's* burden of clearly demonstrating which of the witnesses identified by Google will *actually* materialize, none of witnesses closer to the NDCA should have counted at all. The count should have been 24 willing witnesses against transfer to 0 willing witnesses in favor of transfer, and 2 third-party witnesses in Texas against 0 third-party witnesses in California. *See* § XI(A), *supra*.

Google's identification of 9 third-party witnesses is egregious. Google inflated this number with 7 prior art witnesses despite cold, hard statistics showing that Google is unlikely to even elect their associated prior art for trial, which constitute only 30% and 10.5% of the prior art references against the asserted patents. Appx1362–1363. Google has not even proven *by a preponderance* that any prior art inventor will materialize. *See* § III(A), *supra* (explaining how the burden of proof is higher than a preponderance). Notably, Judge Gilstrap explicitly ruled on a similar fact pattern that HPE/IBM "has not met its burden of showing that these prior art inventors are, in fact, likely to testify." Appx1964–1966, Appx1988–1990.

This is not just a theoretical problem: Google is manipulating this transfer factor and has a historical 0% accuracy in identifying prior art inventors who

27

materialize. *Compare* Appx1412–1413, Appx1416–1417 (Google's predictions from recent case), *with* Appx1540–1541 (final trial witness list).

Google has not clearly demonstrated why it will call witnesses Hykes or Founadi. Under the correct burden of proof, only Roth and Benedito should have been given weight, and this factor should have weighed 2–0 against transfer. Even assuming that Hykes and Founadi will materialize, this factor should have been neutral because Roth and Benedito are in Dallas. *See* § VII(D), *supra*.

### D. The Local Interest Factor should have been neutral

As explained in Sections III(C) and VIII(E) above, this factor should have been neutral because infringement occurs nationwide, and here, potential infringement by third parties is the *only* relevant event that gave rise to a suit and when it occurs nationwide, it is "completely diffuse." *Clarke*, 94 F.4th at 510, 512. Docker and Kubernetes are in California, but their independent software is not alleged to give rise to infringement. They have no greater risk of infringement (and thus, no greater interest) than any Google customer in Texas. Google's own interest in this case cannot be double-counted because this *public* interest factor looks only to the interest of third-parties. *Clarke*, 94 F.4th at 511. Thus, Google's ***own*** design and development in the NDCA legally cannot affect this *public* transfer factor both because Google is not a third-party and because the activities of design and development do not "give rise" to infringement.

28

### E.     Remaining Neutral Factors Unchallenged

VirtaMove does not dispute the District Court's other findings and rulings in this appeal.[6]

### F.     Google's Motion Should Have Been Denied

The District Court should have denied Google's motion for failing to meet the correct burden of proof. Even if the District Court considered the factors, it should have weighed the willing witness against (1) transfer; (2) the compulsory process (third-party witness) factor as either neutral or against transfer; (3) and found all other factors neutral.  This cannot not meet the "good cause" standard under *Clarke* because a *significant* gain in convenience will not *actually* materialize if this case is transferred to the NDCA, and Google's transfer motion should have been denied. 94 F.4th at 508.

## XI.   Formal Requirements for Writ

"A writ of mandamus may issue where: (1) the petitioner has 'no other adequate means to attain the relief he desires'; (2) the petitioner shows 'his right to mandamus is clear and indisputable'; and (3) the issuing court is 'satisfied that the writ is appropriate under the circumstances.'" *In re Cray*, 871 F.3d at 1358. Each of the mandamus requirements are satisfied.

---

[6] VirtaMove will argue differently in its *Amazon* petition that the time-to-trial factor should have weighed against transfer.

## A. First Requirement: VirtaMove Has No Other Relief

For the first factor (that there be no other adequate means for relief), courts have held that issues of venue and §1404(a) specifically satisfy the first requirement. *See, e.g., In re HTC Corp.,* 889 F.3d 1349, 1353 (Fed. Cir. 2018) ("by the time a case is tried and appealed, for example, witnesses would have suffered the inconvenience of travelling to a distant forum."); *Clarke*, 94 F.4th at 516 ("The first requirement is met because there is no other avenue for petitioners to seek recourse for the erroneous transfer decision").

## B. Second Requirement Satisfied by Error of Law

For the second requirement, VirtaMove has explained above how the District Court made an error of law (or ignored a dispositive dispute of law). *Clarke*, 94 F.4th at 516 ("the second requirement for mandamus is also satisfied . . . [when] the district court's transfer decision was patent error.") The authority to issue a writ extends to issues of "basic and undecided legal question[s] when the trial court abused its discretion by applying incorrect law." *In re Cray Inc.*, 871 F.3d at 1358 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) and vacating the district court decision for using the wrong law). Here, the District Court made two errors of law.

First, the burden of proof recently changed, but Google's attorneys did not recognize it and failed to even argue that it met the right burden of proof. Google

simply failed to meet the correct legal standard and instead argued that the bar was not changed at all, arguing "[i]n no way did *Clarke* indicate it set a new 'standard' any different from what [courts] have applied for years." Appx1757. But the Fifth Circuit elegantly explained that now, "[t]he bar is much higher." *Chamber of Com.*, 105 F.4th at 304; *see* Section III(A), *supra*. Because Google did not even argue that it met correct burden of proof, its motion should have been denied.

Second, the District Court failed to properly apply the Fifth Circuit's rigid version of the 100-mile rule. As explained in Sections X(B) above, this resulted in the District Court improperly discounting or ignoring 24 potential witnesses, including all of VirtaMove's witnesses who are closer to Texas.

### C. Third Requirement: Writ is Appropriate

Writ is appropriate for additional reasons that extend beyond just this case. *Clarke*, 94 F.4th at 516 ("Writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case.")

### 1.    This Court Should Clarify the Law

The Federal Circuit should clarify two major questions on transfer law: 1) did *Clarke* raise the burden of proof, and 2) does the Fifth Circuit's "rigid" 100-mile rule apply without further analysis?

There is a history of pent-up demand for clarity. *Motion Offense*, 2022 WL 5027730, at *4–13 (Judge Albright reaching different holdings under Fifth Circuit and Federal Circuit law); *see also Datanet LLC v. Dropbox Inc.*, No. 6:22-CV-01142-OLG-DTG, 2023 WL 7741313, at *8 (W.D. Tex. Nov. 14, 2023) (Judge Gilliland noting split of law in time-to-trial factor); Appx7 (Counts noting clarity is "a worthy goal to the patent bar"); Section IV, *supra* (Judge Gilstrap ruling differently from Judge Gilliland); Appx2092–2093 (Baylor Law Review publishing, "The Federal Circuit Fails to Consistently Apply Regional Circuit Law"); Appx2070–2072 (law firm article explaining how, "[b]y 2022, the discrepancies between the Fifth Circuit and Federal Circuit had become obvious."); Appx2080–2086 ("Federal Circuit Sidesteps Fifth Circuit Ruling on Convenience Transfers").

The Federal Circuit should take this opportunity to realign itself with the Fifth Circuit. *See* Section I, *supra* (explaining Fifth Circuit law controls).

### 2.     The Court Should Stop Transfer Abuse

Patent infringers use the Federal Circuit's mere "relevance" standard for witnesses and evidence as a license to dump speculative witnesses into transfer motions. Russ August & Kabat previously noted how the unique procedural timing of *Resonant Systems, Inc. v. Sony Group Corp.*, which approached trial, revealed the extent of such abuse: 90.9% of witnesses identified in Sony's transfer motion were unlikely to materialize at trial (9.1% accuracy). Appx1512–1514.

Google's recent trials reveal that Google is similarly guilty. In Google's *Touchstream* Transfer Motion, Google named three of 22 witnesses called at trial (13.7% accuracy), and none of the named third-party prior art inventors appeared (0% accuracy). *Compare* Appx1412–1413, Appx1416–1417, *with* Appx1540–1541. Google's *Flypsi* Transfer Motion named only one of the 14 witnesses called at trial (7% accuracy). *Compare* Appx1471–1485 (Google's predictions), *with* Appx1731.

These statistics are appalling: this Court has likely been misled by years of inaccurate predictions. No Court should make decisions based on such unreliable evidence. The Federal Circuit should stop such abuse by enforcing the "*actually materialize*" burden of proof.[7]

### 3.    Denying VirtaMove's Petition Will Cause Real Injustice

VirtaMove, a company based in eastern Canada, chose to file in Texas because it is closer and because Texas courts there reach trial faster.  Appx1796–1797. VirtaMove is a tiny entity with five employees, and every day, technology giants like Google, Amazon, IBM, and HPE continue to bully VirtaMove's out of its own patented market.

---

[7] This will reduce speculative transfer motion filings.  If the Federal Circuit was previously concerned about Judge Albright's caseload, that concern is resolved. Judge Moses's case redistribution order reassigned patent cases filed in Waco, and Judge Albright now has only about 2% of national patent filings.  Appx2205; *see* RPX, Q1 in Review April 2025, https://www.rpxcorp.com/wp-content/uploads/sites/6/2025/04/RPX-Q1-in-Review-April-2025.pdf at 5 (June 3, 2025) (providing statistics).

The NDCA is unfairly slow—and justice delayed is justice denied. VirtaMove's statistics showed that the NDCA about 16 months slower, but the reality is even worse. Appx1368; Appx1685; Appx1689. The last case that the undersigned counsel settled in the NDCA was *Corephotonics, Ltd. v. Apple Inc.*, a case that languished for over six years without trial. Appx2103–2130.

The NDCA is not only slow,[8] it is known to stay cases pending USPTO proceedings. *Id.* at Appx2115–2118 (staying case from December 2018 to April 2022—for ***over 3 years***). Indeed, Google's counsel already wrote to VirtaMove's counsel on February 10, 2025, "Google believes the appropriate course of action is to stay the case pending the resolution of these IPRs through appeals" to tee up an opposed motion to stay pending IPR and appeals in the NDCA. Google is trying to transfer because the NDCA is notoriously slow and expensive. This is the fundamental opposite of convenience—and it will harm VirtaMove by delaying its ability to enforce its patents on technology that Gartner once put in a class of its own.

## CONCLUSION

Legally, Google's motion to transfer used the outdated, lower burden of proof and the wrong formulation of the law. It failed as a matter of law.

---

[8] The WDTX docket clerk mistakenly transferred the case too soon, fixed the error, and immediately notified the NDCA. Appx1935–1940. The NDCA took about ***four months*** to close the NDCA case that was opened in error. Appx2178–2182. The NDCA was unable to even provide a hearing date to be noticed for VirtaMove's administrative motion to close the case. Appx2185.

Fundamentally, VirtaMove has proven that it, its present employees, its relevant former employees, and the inventors, and about half of the named Google employees are all in east Canada, Texas, or locations closer to Texas—and any transfer convenience gained by Google will be offset by inconvenience caused to VirtaMove.  Transfer cannot be *significantly* more convenient overall.

For these reasons, the Court should (1) reverse or vacate the District Court; and (2) order the District Court to request that the Northern District of California to return the transferred case.


June 4, 2025

/s/ *Qi Tong*
Qi (Peter) Tong
ptong@raklaw.com
RUSS AUGUST & KABAT
8080 N. Central Expressway, Suite 1503
Dallas, TX 75225
(310) 826-7474


Reza Mirzaie
rmirzaie@raklaw.com
Shani Williams
swilliams@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474

*Counsel for Petitioner,*
*VirtaMove Corp.*

35

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Circuit Rule 28.1(b). This brief contains 7,710 words excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b), complying with the 7,800-word limit of Federal Rule of Appellate Procedure 21(d)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

June 4, 2025

*/s/ Qi Tong*
Qi (Peter) Tong
ptong@raklaw.com
RUSS AUGUST & KABAT
8080 N. Central Expressway, Suite 1503
Dallas, TX 75225
(310) 826-7474

## <u>CERTIFICATE OF SERVICE</u>

I, Qi Tong, hereby certify that on June 4, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

A copy of the foregoing was served upon the following counsel of record and the district court via FedEx:

David A. Perlson
david.perlson@hoganlovells.com
Antonio R. Sistos
antonio.sistos@hoganlovells.com
Hogan Lovells US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Telephone: (415) 374-2412

Deepa Acharya
deepaacharya@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan,
LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000

Katharine Lee Carmona
Texas State Bar No. 00787399
kcarmona@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, TTX 78701
(512) 236-2000

Hon. Derek Gilliland
800 Franklin Avenue,

Nathaniel St. Clair, II
Texas State Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

Erica Benites Giese
Texas State Bar No. 24036212
egiese@jw.com
1900 Broadway, Suite 1200
San Antonio, TX 78215
(210) 978-7700

Vanessa Blecher
vanessablecher@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan
LLP
295 5th Avenue
New York, NY 10016
973-985-6335

Waco, TX 76701
(254) 750-1514

2

Hon. David Counts                    Midland, TX 79701
200 East Wall                        (432) 685-0350


  June 4, 2025                        */s/ Qi Tong*
                                      Qi (Peter) Tong
                                      ptong@raklaw.com
                                      RUSS AUGUST & KABAT
                                      8080 N. Central Expressway, Suite 1503
                                      Dallas, TX 75225
                                      (310) 826-7474

**<u>CONFIDENTIAL MATERIAL OMITTED</u>**

Certain exhibits are omitted solely because VirtaMove Corp. has a duty of confidentiality to Google LLC under the District Court's protective order. The opening brief does not include any redacted words.